**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS BARNES, on behalf of himself and all others similarly situated, | **Case No.:** |
| Plaintiff, | **CLASS ACTION** |
| vs. | CLASS ACTION COMPLAINT FOR: |
| FINJAN HOLDINGS, INC., ERIC BENHAMOU, DANIEL CHINN, GLENN DANIEL, HARRY KELLOGG, ALEX ROGERS, MICHAEL SOUTHWORTH, GARY MOORE, and JOHN GREENE, | (1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14(e) of the Securities Exchange Act of 1934<br>(4) Violation of § 14(d) of the Securities Exchange Act of 1934<br>(5) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff, Lucas Barnes ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Finjan Holdings, Inc. ("Finjan" or the "Company"), against Finjan and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the

Company, the "Defendants"), for violations of Sections 14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to CFIP Goldfish Holdings LLC ("Parent"), and CFIP Goldfish Merger Sub Inc. ("Merger Sub," collectively with Parent, "Fortress") as a result of an unfair process for an unfair price, and to enjoin an upcoming tender offer on a proposed all cash transaction valued at approximately $43.9 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a June 10, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Finjan will become an indirect wholly-owned subsidiary of Fortress, and Finjan stockholders will receive only $1.55 in cash for each share of Finjan common stock they own. Following successful completion of the tender offer, Fortress will acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer. As a result of the Proposed Transaction, Plaintiff and other Finjan stockholders will be frozen out of any future ownership interest in the Company. The tender offer underlying the Proposed Transaction is set to expire at 12:00 midnight, New York City time, at the end of July 22, 2020 (one minute after 11:59 p.m. New York City time, on July 22, 2020).

3. Thereafter, on June 24, 2020, Finjan filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board created an inadequate "transaction committee" that was ineffectual and sidelined from the start.

5. In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Finjan without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii)

engineering the Proposed Transaction to benefit themselves and/or Fortress without regard for Finjan public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Finjan stockholders.

6.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Recommendation Statement on June 24, 2020 with the SEC in an effort to solicit stockholders to tender their Finjan shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Finjan's stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Recommendation omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Finjan, provided by Finjan to the Company's financial advisor Atlas Technology Group ("Atlas"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Atlas and provide to the Company and the Board.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

CLASS ACTION COMPLAINT

# PARTIES

9.      Plaintiff is a citizen of Canada and, at all times relevant hereto, has been a Finjan stockholder.

10.     Defendant Finjan is a cybersecurity company, provides intellectual property licensing and enforcement services in the United States and internationally. Finjan is incorporated under the laws of the State of Delaware and has its principal place of business at 2000 University Ave., Suite 600, East Palo Alto, CA 94303. Shares of Finjan common stock are traded on the NasdaqGS under the symbol "FNJN."

11.     Defendant Eric Benhamou ("Benhamou") has been a Director of the Company at all relevant times.

12.     Defendant Daniel Chinn ("Chinn") has been a director of the Company at all relevant times. In addition Chinn serves as the Chairman of the Board.

13.     Defendant Glenn Daniel ("Daniel") has been a director of the Company at all relevant times.

14.     Defendant John Greene ("Bromberg") has been a director of the Company at all relevant times.

15.     Defendant Harry Kellogg ("Kellogg") has been a director of the Company at all relevant times.

16.     Defendant Gary Moore ("Moore") has been a director of the Company at all relevant times.

17.     Defendant Alex Rogers ("Rogers") has been a director of the Company at all relevant times.

18.     Defendant Michael Southworth ("Southworth") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

CLASS ACTION COMPLAINT

20.     Non-Defendant, Fortress, Parent of CFIP Goldfish Holdings LLC, is an investment management firm, which operates through segments, including private equity funds, permanent capital vehicles, credit hedge funds, credit PE funds, liquid hedge funds and Logan Circle. Its business is to sponsor the formation of, and provide investment management services for, various investment funds, permanent capital vehicles and related managed accounts. As of December 31, 2019, Fortress had approximately 864 asset management employees and 203 investment professionals across the whole company. Fortress is headquartered in New York and Parent is incorporated under the laws of the State of Delaware.

21.     Non-Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Finjan has its principal place of business is located in this District, and each of the Individual Defendants, as

Company officers or directors, has extensive contacts within this District.

<b>CLASS ACTION ALLEGATIONS</b>

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Finjan common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

a.   The Class is so numerous that joinder of all members is impracticable. According to the First Quarter 2020 Financial Report SEC Filing, as of May 5, 2020, there were over 27.7 million shares of Finjan common stock outstanding. The actual number of public stockholders of Finjan will be ascertained through discovery;

b.   There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.   Whether Defendants have violated the federal securities laws;

ii.   Whether Defendants made material misrepresentations and/or omitted material facts in the Recommendation Statement; and

iii.   Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

CLASS ACTION COMPLAINT

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Finjan and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of Finjan, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Finjan to engage in the practices complained of herein.

29.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.   act with the requisite diligence and due care that is reasonable under the circumstances;

b.   act in the best interest of the company;

c.   use reasonable means to obtain material information relating to a given action or decision;

d.    refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.    avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Finjan, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Finjan, Plaintiff and the other public stockholders of Finjan, including their duties of loyalty, good faith, and due care.

32.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Finjan common stock in the Proposed Transaction.

**SUBSTANTIVE ALLEGATIONS**

***Company Background***

33.     Finjan provides intellectual property licensing and enforcement services in the United States and internationally.

34.     The Company's portfolio comprises of patents related to software and hardware technologies that proactively detect malicious code and thereby protects end users from identity and data theft, spyware, malware, phishing, Trojans, and other Web and network threats. Its patented technologies are used in specific cybersecurity technology areas, including endpoint/cloud software, Web gateway/Internet infrastructure, networking equipment markets, and mobile security. Company's technology scans and repels the latest and unknown threats to network, Web, and endpoint devices on a real-time basis.

35.     Finjan continues to invest in its licensing business through its subsidiaries Finjan, Inc., Finjan Mobile, and Finjan Blue. Company successfully launched a number of subsidiaries which include development of mobile applications through Finjan Mobile and incubation of up-and-coming technology startups pioneering a new generation of security technologies through investment in Jerusalem Venture Partners (JVP) Fund VII's Cyber Labs, having invested alongside other technology companies.

36.     Phil Hartstein, President and CEO of Company spoke on future prospects in their 2019 Fourth Quarter Shareholder Update Press Release on March 4, 2020, saying, "2019 was a year of exploration and preparation for Finjan as we evaluated growth opportunities and partnerships through our strategic options process, progressed our licensing program and prepared for several upcoming trials, which commence next week with ESET," while also adding Company's lack of interest in an acquisition, "After a broad process and careful consideration of the various alternatives, the Board believes remaining an independent entity is currently the best available outcome for Finjan stockholders."

37.     The Company's recent financial performance indicated optimism during a time of worldwide health crisis. For example, in a May 13, 2020 press release announcing its Q1 financial results, the Company highlighted revenue up $3.8 million compared to no revenue for the same period the prior year, while additionally ending the Q1 with approximately $32 million in cash.

Jevan Anderson, CFO of Finjan, commented on these results, "During this time we have made a prudent decision to reevaluate costs amidst the continued uncertainty we are all operating under. While this remains an ongoing process, going forward we have reduced our monthly operating expenses. As of March 31, 2020 our balance sheet remains strong with $32.0 million in cash."

38.     In addition, financial analysts have been bullish on Company and its future success. Investor Observer, a financial investment assistance website, has demonstrated interest in Company by saying in its May 18, 2020 article, "the average rating from Wall Street analysts, FNJN stock has a mean target price of 5. This means analysts expect the stock to rise 252.11% over the next 12 months." This optimism comes from aggregate analysis across the industry. The $5 price target is $3.45 above the acquisition price in the Proposed Transaction, disregarding the vast optimism of an exponential increase in the next year.

39.     Despite this upward trajectory and increasing financial results, the Individual Defendants have caused Finjan to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

40.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants.

41.     First, while the Recommendation Statement indicates that a "Transaction Committee" consisting of independent directors and Defendants Benhamou and Southworth, the Recommendation Statement makes clear that the Transaction Committee "was not empowered to ultimately reject or approve any transaction", and was to be run in "coordination with" Chairman of the Board and Defendant Chinn.

42.     Moreover, as detailed by the Recommendation Statement, the Transaction Committee was specifically bypassed by the Board at the request of Party B, a potentially interested third party, who wanted to deal directly with the Board.

CLASS ACTION COMPLAINT

43.     The Recommendation Statement therefore purposefully obfuscates just who was in control of, and ran, the sales process.

44.     Moreover, the Recommendation Statement is also unclear as to any differences that may exist between the various non-disclosure agreements entered into between Finjan and any interested third party, including Fortress.

45.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

46.     On June 10, 2020, Fortress and Finjan issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **EAST PALO ALTO, Calif., June 10, 2020 (GLOBE NEWSWIRE) --** Finjan Holdings, Inc. (NASDAQ: FNJN) (Finjan) today announced that it has entered into a definitive agreement (the "Merger Agreement") pursuant to which affiliates of Fortress Investment Group LLC (collectively "Fortress") would acquire all outstanding shares of Finjan common stock for $1.55 per share in cash (the "Transaction"), representing an aggregate equity value of approximately $43.9 million. Finjan, a recognized pioneer in the development of cybersecurity technologies, will maintain its brand and business model post-transaction, licensing and enforcing a substantial patent portfolio that has been consistently upheld by courts and patent offices.

> Under the terms of the Merger Agreement, Fortress will commence a tender offer to purchase all the outstanding shares of Finjan's common stock for $1.55 per share in cash. The closing of the tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Finjan's common stock.  Following successful completion of the tender offer, Fortress will acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

> Finjan's Board of Directors unanimously approved the Merger Agreement and recommends that shareholders tender their shares.  In connection with the Merger Agreement, directors and officers of the Company, together with shareholders, in the aggregate holding approximately 28 percent of the outstanding shares of common stock of the Company, have agreed to tender their shares in the offer pursuant to support agreements.

> The Transaction is not subject to any financing condition and is expected to close in the third quarter of 2020.

CLASS ACTION COMPLAINT

Daniel Chinn, Chairman of Finjan Holdings, stated, "The Board of Directors thoroughly evaluated all of our strategic options, giving careful consideration to the current unprecedented and uncertain environment, and we believe that this transaction will provide the best outcome for Finjan and its stockholders. We appreciate the continued patience of our investors and employees and thank them for their support.  We recommend all shareholders to tender their shares in the offer."

Phil Hartstein, President and Chief Executive Officer of Finjan, commented, "We believe that this transaction strengthens our ability to continue executing our business model, particularly while facing unpredictable timelines in the court system and a challenging macro-economic environment. The acquisition enables Finjan to continue to pursue our licensing mission and expand our reputation and credibility on policy related initiatives, while providing us greater resources and opportunities as a Fortress portfolio company."

Eran Zur, Managing Director and head of the Fortress IP Finance Group, commented, "Finjan pioneered many of the technologies that underpin how companies protect their networks from cyberattacks. Finjan had the foresight to patent its innovations and its patent portfolio has been repeatedly upheld by courts and patent offices while being widely licensed to industry players. Fortress and Finjan share a strong belief in the importance of preserving a patent system that allows innovators to earn a fair return on their investment and we look forward to supporting Finjan as it moves forward with its licensing program."

Atlas Technology Group, LLC is acting as exclusive financial advisor to Finjan, and Perkins Coie LLP and GCA Law Partners LLP are serving as legal advisors to Finjan.  Sidley Austin LLP is serving as legal advisor to Fortress.

### The Inadequate Merger Consideration

47.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

48.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent times.

49.     The transaction may undervalue the Company and would result in a substantial loss for many Finjan shareholders. For example, the consideration is 33 percent below the stock price

of $2.33 just from January 2020. Before the most recent worldwide stock drop in March, Finjan stock has not been listed at or below the price in the Proposed Transaction in three years.

50.    Finjan continues to commit financial investment in their innovative security space throughout its licensing business. In Company's 2019 4Q Earnings Call, CFO, Jevan Anderson spoke on Company's investments and their optimistic outlook on the Company's success, "Now I'd like to turn to Finjan Mobile and our mobile browser VPN offering InvinciBull. We have now surpassed 2 million downloads, and we are seeing an increase in paid subscribers due to improved user engagement with our app, an e-mail marketing program to encourage conversions, additional promotions and overall enhanced user experience. We continue to innovate and grow our patent portfolio to protect our investments and inventions in Finjan Mobile. With respect to our investment in Jerusalem Venture Partners, we have fulfilled $3.9 million of our $5 million commitment. The fund has made investments in 13 portfolio companies to date and has already yielded 2 successful exits."

51.    With continuous dedication towards innovation, Company seeks to utilize the new technologies to their advantage. Moreover, the Proposed Transaction represents a significant synergistic benefit to Fortress and Softbank Group Corp. ("Softbank"), the Parent of Fortress, particularly in the technology arena. Softbank has invested hundreds of millions of dollars of investment capital in Cybersecurity to be "one step ahead of hackers" according to an August 6, 2019 CNBC article. Fortress' acquisition of Company's outstanding shares doesn't come at a surprise, as Cybersecurity remains as CEO's biggest threat to the world economy over the next decade, as quoted in the same CNBC article.

52.    As a result, Fortress's ability to utilize Finjan's licensed business with existing portfolio companies, in addition to Finjan's patented technologies and success in infringement cases, exemplify the significant synergistic benefits to Fortress and further raise the stakes as to why Fortress did not pay more for the Company. Clearly, while the deal will be beneficial to Fortress it comes at great expense to Plaintiff and other public stockholders of the Company.

53.     Moreover, post-closure, Finjan stockholders will be frozen out of any ownership interest in the Company, forever foreclosing the ability to see the true return on their investments.

54.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Fortress at the expense of Finjan stockholders, which clearly indicates that Finjan stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

55.     The Merger Agreement contains certain provisions that unduly benefit Fortress by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Finjan to pay up to $1,353,709 to Fortress, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Finjan must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

56.     The Merger Agreement also contains a "No Solicitation" provision that restricts Finjan from considering alternative acquisition proposals by, *inter alia*, constraining Finjan's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Alternative Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

57.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Fortress

1  information in order to match any other offer, thus providing Fortress access to the unsolicited

2  bidder's financial information and giving Fortress the ability to top the superior offer.  Thus, a

3  rival bidder is not likely to emerge with the cards stacked so much in favor of Fortress.

4        58.    These provisions, individually and collectively, materially and improperly impede

5  the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

6  pursuing other reasonable and more valuable proposals and alternatives in the best interests of the

7  Company and its public stockholders.

8        59.    Accordingly, the Company's true value is compromised by the consideration

9  offered in the Proposed Transaction.

10  ***Potential Conflicts of Interest***

11       60.    The breakdown of the benefits of the deal indicate that Finjan insiders are the

12  primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The

13  Board and the Company's executive officers are conflicted because they will have secured unique

14  benefits for themselves from the Proposed Transaction not available to Plaintiff and the public

15  stockholders of Finjan.

16       61.    Certain insiders stand to receive massive financial benefits as a result of the

17  Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently

18  own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon

19  the consummation of the Proposed Transaction.  Notably, the Recommendation Statement does

20  not provide a proper accounting of the Company stock holdings of the Board, Management, and

21  other Company insiders, nor does it provide a proper accounting for how much consideration these

22  stock holdings will be converted to upon the consummation of the Proposed Transaction.

23       62.    Furthermore, upon the consummation of the Proposed Transaction, each

24  outstanding Company option or equity award, will be canceled and converted into the right to

25  receive certain consideration according to the merger agreement.  Notably, the Recommendation

26  Statement does not provide a proper accounting of the Company equity award holdings of the

27  Board, Management, and other Company insiders, nor does it provide a proper accounting for how

28

much consideration these equity award holdings will be converted to upon the consummation of the Proposed Transaction.

63.     Moreover, several Company insiders, are entitled to "golden parachute" awards should their employment with the Company be terminated due to a change-in-control, as would result from the consummation of the Proposed Transaction.  Said benefits are as follows:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|------|------|------|------|------|
| Philip Hartstein *President and Chief Executive Officer* | 997,033 | 310,000 | 31,200 | 1,338,233 |
| Jevan Anderson *Chief Financial Officer, Treasurer and Secretary* | 577,500 | 299,666 | 36,702 | 913,868 |
| Julie Mar-Spinola *Chief Intellectual Property Officer* | 598,175 | 0 | 19,593 | 617,768 |

64.     The Recommendation Statement also fails to indicate whether any Finjan Board Members or other Company insiders may be incorporated into the surviving corporation and receive continued employment.  Any such employment offers would be additional compensation not shared amongst Plaintiff and the Class of public Finjan stockholders and must be disclosed.

65.     Thus, while the Proposed Transaction is not in the best interests of Finjan stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

66.     On June 24, 2020, the Defendants caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

67.     The Recommendation Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

      a.   The nature of any differences that exist between the various non-disclosure agreements entered into between Finjan and any interested third parties, including Fortress;

      b.   The Specific Reasoning as to why the Transaction Committee did not have the authority to reject or approve any transaction;

      c.   The Specific Reasoning as to why the Transaction Committee was bypassed during negotiations with Party B; and

      d.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders;

*Omissions and/or Material Misrepresentations Concerning Finjan's Financial Projections*

68.     The Recommendation Statement fails to provide material information concerning financial projections provided by Finjan's management and relied upon by Atlas in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Recommendation Statement indicates that in connection with the rendering of Atlas's fairness opinions, Atlas reviewed "certain forward-looking financial and other information prepared by management of the Company and furnished to or shared with Atlas by the Company."  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their

own estimates of discount rates or […] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

69.     With respect to both the *April Projections* and the *May Projections* the Recommendation Statement fails to disclose:

> a.   A reconciliation of all non-GAAP to GAAP metrics.

70.     Additionally, while the Recommendation Statement makes it clear that in conducting its *Discounted Cash Flow Analysis*, Atlas relied upon the Company's "unlevered free cash flows for the remainder of the year ending December 31, 2020", the Recommendation Statement does not disclose these projections.

71.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

72.     Without accurate projection data presented in the Recommendation Statement, Plaintiff and other stockholders of Finjan are unable to properly evaluate the Company's true worth, the accuracy of Atlas's financial analyses, or make an informed decision whether to tender their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Atlas*

73.     In the Recommendation Statement, Atlas describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

74. With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

    a. Why each specific transaction was selected.

75. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific discount rate range used;

    b. The specific inputs and assumptions used to calculate the discount rate range used, including;

        i. Finjan's current cost of capital.

76. With respect to the *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the following:

    a. Why only four companies were selected to compare;

    b. The specific reasoning for selecting each of the four comparable companies; and

    c. The enterprise value and revenue for each compared company.

77. With respect to the *Selected Precedent Transactions Analysis* the Recommendation Statement fails to disclose the following:

    a. The date on when each selected transaction closed;

    b. The aggregate value of each selected transaction;

    c. The specific reasoning for selecting each precedent transaction.

78. These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

79. Without the omitted information identified above, Finjan public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial

information and related disclosures, Finjan public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**<u>(Against the Individual Defendants)</u>**

80.    Plaintiff repeats all previous allegations as if set forth in full herein.

81.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

82.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Finjan.

83.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Finjan by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Finjan to its public stockholders.

84.    Indeed, Defendants have accepted an offer to sell Finjan at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

85.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

86.    The Individual Defendants dominate and control the business and corporate affairs of Finjan, and are in possession of private corporate information concerning Finjan's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and

economic power between them and the public stockholders of Finjan which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

87.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

88.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Finjan's assets and have been and will be prevented from obtaining a fair price for their common stock.

89.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

90.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**<u>Against Defendant Finjan</u>**

91.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

92.     Defendant Finjan, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

93.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

94.     Plaintiff and the members of the Class have no adequate remedy at law.

### THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

95.     Plaintiff repeats all previous allegations as if set forth in full herein.

96.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

97.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

98.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

99.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

100.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

101.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of his entitlement to decide whether to tender their shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against All Individual Defendants)**

102.    Plaintiff repeats all previous allegations as if set forth in full herein.

103.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the upcoming tender offer.

104.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.   Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

105.    SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation.   Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

106.    In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

107.    The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

108.    The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the

Recommendation Statement false and/or misleading.  Defendants knowingly or with deliberate recklessness omitted, the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portion of the Recommendation Statement materially incomplete and therefore misleading.

109.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision on whether to tender his Company stock if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer underlying the Proposed Transaction.

**FIFTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

110.    Plaintiff repeats all previous allegations as if set forth in full herein.

111.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Company stockholders.

112.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

113.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Finjan's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

114.    The Individual Defendants acted as controlling persons of Finjan within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Finjan to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Finjan and all of its employees. As alleged above, Finjan is a primary violator of Section 14 of the Exchange Act and SEC Rule Recommendation Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff

as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Enjoining the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Finjan and obtain a transaction which is in the best interests of Finjan and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff, the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 29, 2020                    **BRODSKY & SMITH, LLC**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 26 -
CLASS ACTION COMPLAINT